UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,

    -v-

FNU LNU,
    a/k/a "Cruz Manuel Ramos,"
    a/k/a "Garabato"                      No. 06-CR-172-LTS
    a/k/a "Luis"                          No. 13-CV-3507-LTS
    a/k/a "Crucigrama,"

        Defendant/Petitioner.
-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

FNU LNU, a/k/a "Cruz Manuel Ramos," a/k/a "Garabato," a/k/a, "Luis," a/k/a "Crucigrama" ("FNU LNU" or "Petitioner") was tried and convicted before this Court, and his convictions were affirmed on appeal. Petitioner now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). The Petitioner asserts that each of the three court-appointed attorneys who represented him at various stages of this proceeding rendered ineffective assistance of counsel and that he is therefore entitled to relief pursuant to 28 U.S.C. § 2255. He asserts alternative arguments regarding his comprehension of the proceedings. The Court has thoroughly considered all of Petitioner's arguments, including those advanced by his counsel in a supplemental reply submission, and denies his petition for the following reasons.

## BACKGROUND

Knowledge and familiarity with the facts of this case are assumed. The following is a brief summary of the facts relevant to this Memorandum Order.

Procedural History

        Rafael Santamaria and an individual whose name was unknown but whose alias was "Garabato" were indicted on February 21, 2006, on charges of conspiring to commit a Hobbs Act robbery in July 2004.  Petitioner was identified by the Government as "Garabato" and subsequent superseding indictments added Petitioner, who was named in the indictments as Cruz Manuel Ramos among other alias, and other co-defendants.  On January 27, 2009, a grand jury returned Superseding Indictment S5 06-CR-172-LTS ("S5 Indictment"), charging Petitioner alone in twelve counts with (i) Hobbs Act robbery conspiracy in violation of 18 U.S.C. § 1951 (Count One); (ii) Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Counts Two, Four, Six, Eight, and Ten); (iii) using, carrying, possessing, and brandishing a firearm during and in relation to, and in furtherance of, each of the five robberies, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Three, Five, Seven, Nine, and Eleven); and (iv) conspiracy to distribute, and to possess with the intent to distribute, five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count Twelve).  On May 19, 2009, a Grand Jury returned the final superseding indictment, Superseding Indictment S6 06-CR-172-LTS ("S6 Indictment"), in which Counts One through Twelve were substantially the same as the Counts One through Twelve of the S5 Indictment, and three charges were added: conspiracy to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) by distributing and possessing with the intent to distribute, one kilogram and more of heroin in violation of 21 U.S.C. § 846 (Count Thirteen); and two counts of possession of heroin with the intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C), and 18 U.S.C. § 2 (Counts Fourteen and Fifteen).

        On June 5, 2009, the Court granted Petitioner's motion to sever the robbery/narcotics conspiracy counts (Counts One through Twelve) from the heroin-trafficking

counts (Counts Thirteen through Fifteen).  As a result, there were two trials on the charges in the S6 Indictment.

At the conclusion of the first trial, the jury convicted Petitioner of the crimes charged in Counts One, Two, Three, and Twelve.  At the conclusion of the second trial, the jury convicted Petitioner of the crimes charged in Counts Fourteen and Fifteen.

On January 19, 2011, the Court sentenced Petitioner principally to 348 months of imprisonment, comprising concurrent terms of 240 months' imprisonment on Counts One and Two (the robbery conspiracy and the substantive robbery charges), 288 months' imprisonment on Count Twelve (the narcotics conspiracy related to the robbery conspiracy), and 240 months' imprisonment on Counts Fourteen and Fifteen (sales of heroin), followed by a mandatory consecutive term of 60 months' imprisonment on Count Three (use and possession of a firearm during and in furtherance of robbery).  The Court also imposed concurrent supervised release terms, the longest of which was 12 years, a $500,000 order of forfeiture, and a $600 mandatory assessment.

Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit.  On April 17, 2012, the Second Circuit found that Petitioner's appeal was without merit and affirmed Petitioner's convictions and sentence.

<u>Petitioner's Attorneys</u>

The Court appointed Don Buchwald, Esq. ("Buchwald"), to represent Petitioner on January 6, 2009, replacing earlier court-appointed counsel at Petitioner's request.  Buchwald represented Petitioner during the first trial and the related pretrial proceedings.  The Court denied Petitioner's further request to change counsel on May 20, 2009, finding that Petitioner's reasons

for the request did not warrant a change of counsel. (13-CV-3507 docket entry no. 3-2 at ECF pp. 24–25.)

After the conclusion of the first trial, the Court granted Petitioner's request to change counsel and appointed Sanford Talkin, Esq. ("Talkin), to represent Petitioner. Talkin represented Petitioner during the second trial and at sentencing for all of Petitioner's convictions on the S6 Indictment.

The Second Circuit appointed Glenn Falk, Esq. ("Falk"), to represent Petitioner for the purposes of his direct appeal.

## DISCUSSION

A petitioner may prevail on a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 if he can show that his sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral relief under 28 U.S.C. § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). The grounds for relief under Section 2255 are limited, out of "respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place." Id.

I.  Ineffective Assistance of Counsel Claims

An individual may prevail on a habeas petition where he can show that he received ineffective assistance of counsel.  See Massaro v. United States, 538 U.S. 500, 505–06 (2003).  To prevail on a claim of ineffective assistance of counsel, the petitioner must show (1) that counsel's performance was deficient under an objective standard of reasonableness; and (2) that petitioner was prejudiced as a result of counsel's deficient performance.  Strickland v. Washington, 466 U.S. 668, 694 (1984).  In this analysis, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.  The Court evaluates Petitioner's claims of ineffective assistance of counsel with respect to each of his three attorneys.

   A. Representation of Petitioner During First Trial

Petitioner argues that Buchwald rendered ineffective assistance of counsel for the following principal reasons.  The Court analyzes each argument in turn.

   1. Effect of Rejecting the Plea Offer – Government's Filing of a Prior Felony Information

First, Petitioner argues that Buchwald was ineffective because he allegedly did not inform Petitioner of the effect that the Government's filing of a prior felony information would have on the mandatory minimums.  Petitioner alleges that he "was unaware that the government filed a prior felony information to seek an enhanced penalty with regard to his 1997 felony drug conviction in the State of New Jersey" and that "he was led to believe—by his attorney—that the government would and did seek only to introduce his prior conviction as character evidence at trial . . . ."  (Pet. at 19.)  Petitioner's allegation is rebutted by evidence to

the contrary. In a letter addressed to Petitioner dated May 7, 2009, a copy of which is attached to the Petition, Buchwald wrote to Petitioner:

> Enclosed is a copy of a letter I just received from the prosecutors advising that on May 15th (one week from this Friday) they will file a prior felony information in your case unless you have previously agreed to plead guilty. This would [a]ffect Count 12 of the present indictment by increasing the mandatory minimum sentence should you be convicted on that count from ten years to 20 years (in view of your prior 1996 conviction in New Jersey).

(Pet. Exhibit D at 2, 13-CV-3507 docket entry no. 3-1 at ECF p. 35.) The prior felony information was filed on May 19, 2009 (06-CR-172 docket entry no. 140). At a conference before the Court on May 20, 2009, Petitioner complained that Buchwald's letter had not been delivered to him promptly, but proffered a copy reflecting his written acknowledgment that he had received the letter on May 14, 2009. He also stated that counsel had visited him twice to discuss the letter before he actually received it. (Conf. Tr. May 20, 2009, 13-CV-3507 docket no. 3-2 at ECF p. 18.) With respect to his practice of both writing letters and meeting with Petitioner regarding significant case events, Buchwald added,

> We have on each occasion, when we have obtained either new discovery or there has been a new indictment or there has been a plea offer, gotten correspondence to Mr. Ramos. In almost all cases, we deliver it and personally put it into the mailbox at the MCC . . . .

(Id. at ECF p. 21.)

> On several occasions, what we do is we go over the letter with Mr. Ramos when we visit him, and if the guard permits us to leave a letter with him, we do so. If the guard does not permit us . . ., after we've spoken to him or before we've spoken to him, on the way up, we drop a copy off in the legal mail. * * * But in each instance, we have either personally given it to him, reviewed it with him during visits, and/or told him that we were leaving it downstairs or have left it downstairs.

> I do not believe that there is a piece of discovery in this case or a new indictment in this case or a plea offer in this case which has not been communicated to him in writing and which has not been discussed with him personally, usually by myself, occasionally delivered to him by a colleague who was seeing him.

(Id. at ECF p. 22.) In response to the Court's inquiry as to whether Buchwald had thoroughly discussed Petitioner's decision to go to trial rather than accept a plea offer, Buchwald stated in open Court and in Petitioner's presence on May 20, 2009 that "whenever there is an offer or suggestion or a new legal matter that affects his maximum sentences or minimum sentences, we must advise him of those things, and I've explained to him that we are required to do that . . . . [Petitioner] has made clear his position with respect to deals or no deals, trials or no trial." (13-CV-3507 docket entry no. 3-2 at ECF p. 23.)

On June 15, 2009, the Court asked Buchwald, in open court and in Petitioner's presence, whether he had discussed mandatory minimums with Petitioner (13-CV-3507 docket entry no. 3-2 at ECF p. 8.) Buchwald responded that, "We have discussed the mandatory minimums that go with each of the charges, at length, and frequently. They are also embodied in an extensive letter which we wrote to him . . . and which was translated for him." (Id.) The Court rejects as contrary to the record Petitioner's assertions that he was uninformed that the Government would file a prior felony information as a result of rejecting the plea offer and of the impact of the filing on the mandatory minimum sentence. (Decl. in Reply ¶ 13.)

With regard to Petitioner's contention that Buchwald rendered ineffective assistance by failing to inform him specifically of the 127-year aggregate mandatory minimum sentence to which he could have been subject, if convicted on all counts at trial, the Court is satisfied that Petitioner cannot establish that he suffered prejudice. The record reflects that

Petitioner was made aware that he faced a mandatory minimum sentence consisting of twenty-years (or 240 months) in prison, plus a five-year period of supervised release on Count Twelve alone, and that, if he went to trial on all of the counts, he could be exposed to upward of 240 months of imprisonment, since several of the other counts in the charging instrument carried mandatory minimum sentences. Indeed, Petitioner acknowledges in his affidavit in support of the Petition that, after Buchwald had explained the ten-year mandatory minimum sentence, "he would attempt to explain a different version that involved another statutory mandatory requirement for the firearm offense, which provided a consecutive seven year term of imprisonment." (13-CV-3507 docket entry no. 3 at ECF pp. 45–46; see also Conf. Tr. 8:4–8, Jun. 15, 2009 (counsel's statement on the record that, in response to a specific request made by Petitioner, counsel discussed with Petitioner "certain mandatory minimums, not the ten year mandatory minimum, but some fives and a seven").)

There is also ample documentation that he was aware that his plea offer – which would have required him to plead guilty to a three-count superseding information – would have reduced his sentencing exposure to a stipulated Guidelines range of 192 to 219 months of imprisonment, with a mandatory minimum sentence of 144 months, 84 months of which would be served consecutively to any other sentence. (See 13-CV-3507 docket entry no. 3 at ECF pp. 44–49; 13-CV-3507 docket entry no. 3-1 at ECF pp. 22–32.) Instead of accepting the plea offer, Petitioner elected to go to trial and face exposure to a 240-month mandatory minimum on Count Twelve, as well as any additional custodial sentences stemming from the other counts. Because Petitioner was aware of, and rejected, this opportunity to reduce his sentencing exposure, and in light of other evidence on the record indicating that his attorney did review with him the

mandatory minimums associated with each count, the Court finds Petitioner's assertion that he would have accepted the plea offer had he been told that his maximum cumulative mandatory sentencing exposure was 127 years inadequate to demonstrate prejudice.

The Court, accordingly, dismisses the Petition to the extent it claims that Buchwald rendered ineffective assistance of counsel with respect to advice relating to Peittioner's sentencing exposure, the effect of the prior felony information, and the Government's plea offer.

2.   Failure to Call Witnesses or Investigate Certain Defenses

Second, Petitioner argues, without proffering specific factual allegations, that Buchwald failed to call witnesses or investigate "certain" defenses. The Petition does not identify any defenses Petitioner claims could have been raised, nor does he identify any potential defense witnesses other than himself. It is well established that an attorney's decision whether or not to call certain witnesses is considered a strategic decision, United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000), and decisions of strategy are accorded a presumption of reasonableness, Strickland, 466 U.S. at 689; see Greiner v. Wells, 417 F.3d 305, 319–20 (2d Cir. 2005). "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." Best, 219 F.3d at 201. Buchwald's alleged decision not to call certain witnesses and investigate certain defenses, therefore, are afforded a presumption of reasonableness, which Petitioner's generalized assertions are insufficient to overcome. Petitioner's complaint that Buchwald's failure to call Petitioner himself as a witness is indicative of ineffective assistance is belied by Petitioner's own confirmation on the trial record that he was aware of his right and had decided not to testify. (Tr. 1288–1291, June 30, 2009.) Petitioner thus

has failed to demonstrate that Buchwald's performance fell below the Strickland standard in this regard.

       3.    Failure to Conduct Adequate Pretrial Investigation or Disclose Rule 3500 Material

Third, Petitioner makes the conclusory allegation that Buchwald did not conduct an adequate pretrial investigation or review adequately with him material produced by the Government pursuant to 18 U.S.C. § 3500 ("3500 material"). Prior to the first trial, Petitioner made substantially similar arguments, which the Court considered and rejected. (13-CV-3507 docket entry no. 20–22.) During a hearing on the eve of trial, in addressing Petitioner's renewed request for change of counsel, the Court stated:

> it is my belief and my determination, based on the letter and all of our prior communications, that the problem here is not a lack of appropriate legal work by defense counsel. Rather, it is an understandable reaction to candid advice, to specific advice that Mr. Buchwald, as your lawyer, is obliged to give you about what the law is and about what the options are. And so in that context, I find that there is no good cause or appropriate basis for a change of counsel, particularly given that we are on the eve of trial and the amount of work and preparation for this trial that has been performed.

(13-CV-3507 docket entry no. 3-2 at ECF p. 51.)

Furthermore, as the Government argues, Buchwald's performance during the trial and other court proceedings demonstrated his knowledge and familiarity with the 3500 material. The Government also notes that Buchwald's cross-examination of Government witnesses, which included questions regarding prior statements of witnesses that were contained in the 3500 material, could not have occurred without Buchwald's diligent review of the material. The Government further notes that the cross-examination "included topics that were clearly provided by the defendant and addressed . . . in the 3500 material," undermining Petitioner's unsworn

assertion that Buchwald had not reviewed the 3500 material with Petitioner in formulating defense strategy. (Gov't Br. Opp'n Pet. 27–28.) Nor has Petitioner made a showing of prejudice arising from Buchwald's alleged failure to discuss 3500 material with Petitioner and the alleged failure to conduct an adequate pretrial investigation.

Based on the Court's extensive observation of Buchwald's performance during pretrial proceedings and during trial, as well as the representations made by Buchwald regarding his preparation and communication with his client, the Court is persuaded that Petitioner has shown neither deficient performance nor prejudice, and therefore dismisses the Petition to the extent it is premised on Buchwald's alleged ineffective assistance of counsel with respect to pretrial investigation and review and disclosure of 3500 material.

4.   Failure to Move for a Mistrial

Fourth, Petitioner argues, Buchwald was ineffective in failing to move for a mistrial when he had an opportunity to do so. The decision whether to move for a mistrial is a strategic one that lies within a defense counsel's discretion. See Watkins v. Kassulke, 90 F.3d 138, 143 (6th Cir. 1996) (decision to request a mistrial is a strategic decision for counsel because of multiple options counsel must consider when deciding whether to request a mistrial); Walker v. Lockhart, 852 F.2d 379, 382 (8th Cir. 1988) (counsel need not consult with defendant when making strategic decision not to request a mistrial). Thus, counsel's decision not to move for a mistrial is afforded a strong presumption of reasonableness. Petitioner has proffered neither facts nor legal arguments demonstrating that Buchwald's decision was a product of deficient performance under the first prong of Strickland. Moreover, Petitioner fails to show that "the result of the proceeding would have been different" had Buchwald moved for a mistrial. Hence,

Petitioner also fails to make the required showing of prejudice under the second prong of Strickland. The Court, accordingly, dismisses the claim.

B. Representation of Petitioner at Sentencing

Petitioner asserts that Talkin provided ineffective assistance by failing to "investigate, develop, present mitigating evidence" at sentencing; by failing to successfully challenge the base offense level under the United States Sentencing Guidelines as determined from the drug amount calculated by the Court, rather than by the jury; by failing to object to the application of the prior felony information to determine Petitioner's mandatory minimum; and by failing to challenge the reasonableness of the sentences imposed on Counts Fourteen and Fifteen. Each of the arguments is without merit.

Petitioner provides no legal or factual basis for these arguments. Petitioner's first suggestion – that Talkin should have raised an argument that a jury, not the Court, should have determined the appropriate drug weight when calculating the base offense level – has no basis in law. To the contrary, case law is clear that the Court – not the jury – must determine the appropriate drug weight when calculating the base offense level for advisory guideline application purposes. See, e.g., United States v. Vaughn, 430 F.3d 518, 526 (2d Cir. 2005). As a result, Talkin's failure to raise this argument does not constitute ineffective assistance. With respect to any objection to reliance upon the prior felony information, even though Talkin did not raise the issue, the Court was apprised of it through Petitioner's separate pro se sentencing submission, and the Court rejected Petitioner's legal argument. Therefore, Petitioner can make no claim of prejudice arising from Talkin's failure to raise the issue. Turning to the reasonableness of the sentences imposed on Counts Fourteen and Fifteen, Petitioner offers no

legal or factual support for his claim that the sentences were excessive.  Nor does Petitioner explain how Talkin's performance was deficient or how he was prejudiced.  Therefore, Petitioner's claims with respect to his representation at sentencing are without merit and are, accordingly, dismissed.

### C. Representation of Petitioner on Direct Appeal

Petitioner argues that Falk, who represented him on direct appeal, was ineffective because he failed to raise "obvious meritorious claims."  The "obvious meritorious claims" are (1) the ineffective assistance of his trial counsel; (2) insufficient evidence to render a guilty verdict or finding on the quantity of drugs Petitioner was convicted of selling; (3) insufficient evidence of the acquitted charges that the Court used in applying the sentencing guidelines as part of his grouping; (4) the Court's decision to deny Petitioner's pretrial motions to replace counsel; (5) the cumulative effect of errors and insufficient investigation; (6) excessive sentence imposed for Counts Fourteen and Fifteen (the two counts of heroin sale); and (7) the disproportionate nature of Petitioner's sentence as compared to co-defendants.  Petitioner also asserts that Falk's failure to file a petition for a writ of certiorari with the Supreme Court of the United States constituted ineffective assistance.  For the following reasons, Petitioner's arguments are unavailing.

1. Failure to Raise Certain Arguments

Falk's decision not to raise certain arguments that Petitioner believes were "obvious meritorious claims" is not a valid basis upon which an ineffective assistance of counsel claim may be asserted.  It is well established that counsel on appeal has no constitutional duty to

raise every nonfrivolous issue requested by defendant.  Jones v. Barnes, 463 U.S. 745 (1983).  Petitioner alleges that he "specifically instructed the appellate attorney to raise on direct appeal" certain issues and that Falk "ignored" those requests.  (Pet'r's Decl. in Reply at 6.)  Because Falk had no constitutional duty to raise those arguments, Petitioner has failed to show that this act or omission constitutes deficient performance under the first part of Strickland's two-part analysis.

Moreover, Petitioner fails to make the required showing of prejudice under Strickland.  As explained elsewhere in this Memorandum Order, the Court has considered and found unsupported by the record Petitioner's contentions that his trial counsel was ineffective, that the Court's denial of Petitioner's request to change counsel violated his Sixth Amendment right to counsel, and that his Sixth Amendment rights were violated by reason of other "errors and insufficient investigation."

Turning to Petitioner's sufficiency of evidence arguments, Petitioner identifies no facts and thus fails to meet the "very heavy burden placed on a defendant challenging the sufficiency of the evidence underlying his conviction."  Knapp v. Leonardo, 46 F.3d 170, 187 (2d Cir. 1995) (internal quotations and citation omitted).

Petitioner also asserts, without explanation, that his sentence was "disproportionate" as compared to those of his co-defendants in this case.  That assertion, without more, is not enough to raise an issue as to the propriety of Petitioner's sentence, especially in light of the facts that each of Petitioner's four co-defendants acted as a cooperating witness and each co-defendant was convicted on fewer counts than Petitioner's six counts of conviction.  Put differently, Petitioner fails to demonstrate that the differences between Petitioner's sentence and those of his co-defendants was not merely the product of differences in

the defendants' circumstances, charges, and roles in the underlying criminal activity.  The Court finds that Falk's decision not to raise these arguments, was, at the very least, non-prejudicial to Petitioner and, accordingly, dismisses this claim.

2. Failure to File a Petition for Writ of Certiorari

Petitioner also argues that Falk provided ineffective assistance of counsel by failing to file a petition for a writ of certiorari with the Supreme Court.  This argument is meritless.  Since Petitioner had no constitutional right to counsel to pursue an appeal with the Supreme Court, he could not be deprived of the effective assistance of counsel by his counsel's failure to file a petition for a writ of certiorari.  Ross v. Moffitt, 417 U.S. 600, 617–18 (1974); see Wainwright v. Torna, 455 U.S. 586, 587 (1982).  The Court thus rejects this claim.

III.     Additional Sixth Amendment Right to Counsel Claim

Petitioner also argues that the Court violated his Sixth Amendment right to counsel by denying his request to replace Buchwald with a different trial counsel for the first of his two trials.  It is well settled that the constitutional right to court-appointed counsel does not guarantee a defendant counsel of his personal preference.  Morris v. Slappy, 461 U.S. 1, 13–14 (1983).  The Court made this principle clear to Petitioner, as evidenced in the transcript of an ex parte hearing that Petitioner attached to his Petition.  In denying Petitioner's request for change of counsel, the Court stated:

> I've listened very carefully to Mr. Ramos and I've also listened very carefully to Mr. Buchwald. . . . I see and I am convinced that Mr. Buchwald is preparing appropriately for trial and appropriately making motions and discussing matters with you, Mr. Ramos.  The right is to an attorney who is schooled in the law and who will provide you with effective representation, not to the optimal preferred

>personal situation. And so, this is an appointment that is very well protective of your legal rights, Mr. Ramos, and Mr. Buchwald and his team are the lawyers with whom you will go to trial or otherwise complete the case before this Court.

(13-CV-3507 docket entry no. 3-2 at ECF pp. 24–25.) The Court, as a result, rejects Petitioner's argument that his Sixth Amendment right was violated by the Court's denial of his request to change counsel and dismisses this claim.

IV. Other Arguments

Petitioner raises two additional arguments. First, he argues that he may not have received adequate Spanish-language translation. (Pet. at 22.) Petitioner cites no evidence to support his assertion that he received inadequate translation, cf. Augustin v. Sava, 735 F.2d 32, 35 (2d Cir. 1994) (evidence of inaccurate translation apparent from the record), or that the supposed translation inadequacies affected the outcome of the proceedings. The Court gave ample opportunity to Petitioner to raise concerns about the adequacy of the interpreter's services. For example, at the beginning of the June 15, 2009, court proceedings, the Court stated, "Mr. Ramos, if you have any difficulty hearing through the earphones or understanding the interpretation, please let me know." (13-CV-3507 docket entry no. 3-2 at ECF p. 4.) Petitioner did not indicate at any point during the proceedings that he had difficulty understanding the interpretation. To the contrary, he later stated during those proceedings, "With all due respect, I would like to tell your Honor, I understood everything that you have told me." (13-CV-3507 docket entry no. 3-2 at ECF p. 9.) Furthermore, the Court had the opportunity to observe Petitioner during all of the proceedings and Petitioner exhibited engagement in the discussions and appeared to understand the proceedings well. The Court, accordingly, denies the Petition to

the extent it is based on the assertion that Petitioner received inadequate Spanish-language translation.

Petitioner also argues in the alternative that, even if his attorney's advice was faithfully interpreted, Petitioner had difficulty understanding the advice because his "ability to comprehend is below average" (Pet. at 23). This argument is also unavailing. Petitioner's bald assertions of his difficulties comprehending the proceedings are insufficient to raise issues of fact in light of Petitioner's failure to offer anything other than his own unsworn assertion, and in light of the Court's own extensive interactions with Petitioner during two trials, pretrial conferences, allocutions, and sentencing, during which Petitioner never exhibited difficulty comprehending the proceedings and never raised the issue of his alleged learning or comprehension difficulties even when given the opportunity to do so. For all of these reasons, Petitioner's remaining claims are dismissed.

## CONCLUSION

For the foregoing reasons, the Petitioner's motion to vacate, set aside, or correct his sentence is denied. This Memorandum Opinion and Order resolves docket entry no. 263 (06-CR-172). The Clerk of Court is requested to enter judgment in favor of the Government and to close case 13-CV-3507.

Petitioner may not appeal this order unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C.S. § 2253(c)(1) (LexisNexis 2008). A certificate will be granted "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.S.§ 2253(c)(2) (LexisNexis 2008); see generally United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability). The

Court finds that Petitioner will not be able to sustain this burden. Thus, the Court declines to issue a certificate of appealability. Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. Accordingly, any application to proceed on appeal in forma pauperis with respect to the claims addressed in this Order is denied. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

    SO ORDERED.

Dated: New York, New York
       September 4, 2015

                                        /s/     Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        United States District Judge